[No. 14760.  Department Two.  July 9, 1918.]

RALPH S. VALENTINE, *as R. S. Valentine & Company,*
*Appellant,* v. NEBRASKA BRIDGE SUPPLY &
LUMBER COMPANY, *Respondent.*[1]

SALES—CONTRACT—WARRANTY—CONSTRUCTION—DAMAGES.  A con-
tract for the sale of lumber providing that "it is understood" that no
lumber should be below a specified grade, constitutes a warranty of
quality, entitling the purchaser to damages for delivery of inferior
quality.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered January 12, 1918, upon
findings in favor of the defendant, in an action on con-
tract, tried to the court.  Affirmed.

*Grant A. Dentler,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

MOUNT, J.—This action was brought to recover an
alleged balance of $130.36 from the defendant for three
cars of lumber sold and delivered to defendant upon a
written contract.  The complaint alleged a modifica-
tion of the written contract before delivery of the lum-
ber.  The defendant, after denying the modification of
the written contract, alleged a counterclaim of $244.59.
The case was tried to the court without a jury, and re-
sulted in a judgment in favor of the defendant for
$114.23.  Plaintiff appeals from that judgment.

The principal facts are as follows:  On April 17,
1917, the appellant, by a written order, agreed to ship
to W. D. Moreland, Minnesota Transfer, Minnesota,
a certain amount of white pine lumber, "1x4 and wider,
No. 2 common and better, surfaced two sides to ⅞,
at $20; and 2x6 and wider, No. 2 common and better,

[1] Reported in 173 Pac. 746.

surfaced two sides, 1-7/8, at \$17.'' The contract provided as follows:

''It is understood that this stock will be graded strictly in accordance with the White Pine grading rules and that no lumber below the grade of No. 2 common shall be loaded.''

In order to fill this contract, the appellant purchased the lumber from the Dempsey Lumber Company in the rough, expecting to be able to have the lumber surfaced at \$2 per thousand. When the appellant was not able to get the lumber surfaced at \$2 per thousand, after some discussion the respondent agreed to procure the surfacing of the lumber, and that \$2 per thousand should be deducted from the contract price. The lumber was thereupon loaded by the appellant upon cars and shipped to certain mills for dressing. After the lumber was dressed, it was reloaded on the cars and shipped to Brooks Brothers at Minnesota Transfer, where it was delivered and graded. After it was graded it was found that a part of the lumber did not come up to grade, as stated in the contract, ''No. 2 common and better,'' and deductions were made on that account amounting to \$244.59. The respondent was notified of these deductions because the lumber did not come up to grade of No. 2 common and better, and thereafter notified the appellant. The appellant thereupon claimed that the lumber was to be graded in the rough and not as dressed lumber. This action resulted.

Upon the trial, the court found that the only modification of the written contract was

''that the defendant should procure the surfacing of said lumber for and on behalf of the plaintiff and should be allowed a credit on the purchase price of \$2 per thousand to apply on the cost of surfacing. That otherwise the aforesaid written contract of April 17 was to remain in full force and effect.''

While the appellant argues a number of points, we think there are but two controlling questions in the case: First, whether the contract was modified so that the lumber was sold to the respondent as rough lumber and to be graded as such; second, whether the provision in the contract to the effect:

"It is understood that this stock will be graded strictly in accordance with the White Pine grading rules and that no lumber below the grade of No. 2 common shall be loaded,"

was, in effect, a warranty of the quality of the lumber.

Upon the first question, there was a direct conflict in the evidence. The written contract required the lumber to be surfaced two sides. The appellant contends that the evidence shows that the contract was modified so that the lumber was to be delivered in the rough and graded as rough lumber. It is conceded that No. 2 common rough lumber will not grade No. 2 dressed lumber. The respondent, on the other hand, contends that the contract was not modified with respect to the grade of the lumber as dressed lumber; that all it agreed to do was to have the lumber dressed and pay the difference between $2 and the actual cost of the dressing, which was $2.50 per thousand. The court, after seeing the witnesses and hearing the evidence upon this question, concluded, and we think rightly, that there was no modification of the contract with reference to the grade of the lumber as dressed lumber.

Upon the second question, it is contended by the appellant that the word "understood," as used in the written contract, is equivalent to the word "agreed," and that an agreement that "no lumber below the grade of No. 2 common shall be loaded" was not a warranty of the quality of the lumber. Whether the word "understood" in the written contract is to be

construed as "agreed" makes no difference. It was
agreed that no lumber below the grade of No. 2 should
be loaded. It seems to us this was a warranty of the
quality of the lumber. In the case of *Fink v. Marr*,
81 Wash. 92, 142 Pac. 482, it was conceded that the
phrase "to be No. 1 stock with culls thrown out," in
a contract for the sale of apples, constituted a war-
ranty of the quality of the apples; and in the case of
*Peterson v. Denny-Renton Clay & Coal Co.*, 89 Wash.
141, 154 Pac. 123, where there was a contract for the
sale of highway paving brick, we held that the words
"highway paving brick" meant that it was necessary
to furnish that character of brick, and were, in sub-
stance, a warranty of the quality of the brick; and
where a warranty of that kind is made, it follows that
the purchaser may recover damages for the failure to
deliver the quality of the article agreed to be fur-
nished. In that case we said:

"It would seem a travesty on justice to hold that
a party could not show, in a suit to recover the pur-
chase price, that the article delivered was not the ar-
ticle contracted for, but one of inferior quality and
less value. It would be taking away a defense of liti-
gants that has never been questioned by the courts.
The authorities are united in holding that a vendee,
when sued for the purchase price of goods, may show
that the goods were not what he contracted for. . . .
"The right of a vendee, when sued for the purchase
price of goods, to show that the goods received were
not as contracted for is well established; *Tacoma Coal
Co. v. Bradley*, and *Dickinson Fire & Pressed Brick
Co. v. Crowe & Co., supra.*"

See, also, *Fink v. Marr, supra.*
We are of the opinion, therefore, that the trial court
properly held that this provision in the contract was,
in substance, a warranty, and that the respondent was

entitled to offset the damages against the balance due on the purchase price.

The judgment is therefore affirmed.

MAIN, C. J., HOLCOMB, CHADWICK, and MACKINTOSH, JJ., concur.